## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| CITY PENSION FUND FOR FIREFIGHTERS AND POLICE OFFICERS IN THE CITY OF MIAMI BEACH, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AEROVIRONMENT, INC., WAHID NAWABI, KEVIN P. MCDONNELL, and MARY CLUM,<br><br>Defendants. | Case No. 1:26-cv-00875-CFC<br><br>**CLASS ACTION** |

## OPENING BRIEF IN SUPPORT OF THE MOTION OF THE FLORIDA FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

**Dated: July 27, 2026**

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Anthony M. Calvano (DE Bar ID #6265)
Gregory V. Varallo (DE Bar ID #2242)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
anthony.calvano@blbglaw.com
greg.varallo@blbglaw.com

**SAXENA WHITE P.A.**
Maya Saxena
Lester R. Hooker
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

[Additional counsel appear on signature page]

*Counsel for Proposed Lead Plaintiff the Florida Funds, and Proposed Lead Counsel for the Class*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ........................................................................................................1

NATURE AND STAGE OF PROCEEDINGS .........................................................5

SUMMARY OF THE ARGUMENT .........................................................................5

STATEMENT OF FACTS ..........................................................................................6

ARGUMENT ...............................................................................................................9

I.  THE FLORIDA FUNDS ARE THE MOST ADEQUATE
    PLAINTIFF AND SHOULD BE APPOINTED LEAD
    PLAINTIFF ......................................................................................................9

    A.  The Florida Funds' Motion Is Timely ...................................................9

    B.  The Florida Funds Have the Largest Financial Interest in the
        Relief Sought by the Class ...................................................................10

    C.  The Florida Funds Satisfy the Requirements of Rule 23 ....................11

    D.  The Florida Funds Are Precisely the Type of Lead Plaintiff
        Envisioned by the PSLRA ...................................................................14

II. THE COURT SHOULD APPROVE THE FLORIDA FUNDS'
    SELECTION OF LEAD COUNSEL .............................................................17

CONCLUSION .........................................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
2020 WL 815136 (E.D. Pa. Feb. 19, 2020) ........................................................15

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ...................................................................*passim*

*Himes v. Five Below, Inc.*,
2024 WL 4596235 (E.D. Pa. Oct. 28, 2024) .........................................................1

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) ...........................................................................15

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
63 F. Supp. 3d 394 (D. Del. 2014)................................................................12, 15

*Wigginton v. Advance Auto Parts, Inc.*,
2018 WL 5729733 (D. Del. Nov. 2, 2018)....................................................11, 12

**Statutes**

15 U.S.C. § 78u-4 *et seq.* ..............................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 23(a)(4).......................................................................................12

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N.
730 (1995)......................................................................................................3, 14

City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Miami FIPO") and City Pension Fund for Firefighters and Police Officers in the City of Miami Beach ("Miami Beach F&P" and, together with Miami FIPO, the "Florida Funds") respectfully submit this Opening Brief in support of their motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order: (i) appointing the Florida Funds as Lead Plaintiff; (ii) approving their selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Saxena White P.A. ("Saxena White") as Lead Counsel for the Class; and (iii) granting such other relief as the Court may deem just and proper.

## **INTRODUCTION**

On July 17, 2026, Plaintiff Miami Beach F&P, through its counsel, Bernstein Litowitz, filed the above-captioned securities class action (the "Action") alleging that beginning at 4:30 PM ET on June 24, 2025, through June 18, 2026, inclusive (the "Class Period"),[1] AeroVironment, Inc. ("AeroVironment" or the "Company")

---

[1] In addition to this Action, another securities class action alleging substantially similar claims was filed in the U.S. District Court for the Eastern District of Virginia. *See Norrell v. AeroVironment, Inc.*, No. 1:26-cv-01429 (E.D. Va. filed May 26, 2026) ("*Norrell*" and, together with this Action, the "Related Actions"). The Florida Funds anticipate that this Action will be consolidated with *Norrell* in the Eastern District of Virginia. The complaint in *Norrell* alleges a shorter class period of June 25, 2025 through March 10, 2026. *See Norrell*, D.I. 1. For purposes of appointing a lead plaintiff, the longest alleged class period typically governs. *See Himes v. Five Below, Inc.*, 2024 WL 4596235, at *2 n.3 (E.D. Pa. Oct. 28, 2024). Accordingly, for purposes of this motion, the

1

and certain of its senior executives (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).    The Action alleges that, throughout the Class Period, Defendants misrepresented that the Company's major contract to develop military satellite command and control stations for the U.S. Department of Defense's ("DoD's") Satellite Communications Augmentation Resource ("SCAR") program was secure and that the program was on track. AeroVironment investors—including the Florida Funds—incurred significant losses when it was revealed the SCAR contract was under threat from competition and that the DoD was terminating the contract and soliciting proposals from other vendors.

The PSLRA instructs this Court to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.    15 U.S.C. § 78u-4(a)(3)(B)(i).    The PSLRA creates a presumption that the "most adequate plaintiff" is the movant that has the "largest financial interest" in the relief sought by the Class in this litigation and that also makes a *prima facie* showing that it meets the typicality and adequacy requirements of Rule 23.    15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).    The Florida Funds are the "most adequate plaintiff" by virtue of, among other things, the approximately $640,000

Florida Funds have applied the longest Class Period and allegations asserted in this Action.    The Florida Funds are concurrently filing a substantially similar motion in *Norrell* to preserve their interests.

2

loss that they incurred on their purchases of 6,315 shares of AeroVironment common stock during the Class Period—a substantial financial interest that will ensure the vigorous prosecution of investors' claims.[2]

In addition to asserting the largest financial interest in this litigation, the Florida Funds also satisfy the relevant requirements of Rule 23 because their claims are typical of all Class members and because they will fairly and adequately represent the interests of the Class.  As highly sophisticated institutional investors, the Florida Funds are the prototypical investors envisioned by Congress to serve as lead plaintiff under the PSLRA, and their appointment would therefore fulfill this critical legislative purpose.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").  The Florida Funds have a substantial financial interest in the litigation, and both have experience serving as plaintiffs in complex cases asserting claims under the federal

---

[2] The Florida Funds' PSLRA-required Certifications, which set forth all of the Florida Funds' transactions in AeroVironment securities during the Class Period, are attached as Exhibit A to the Declaration of Anthony M. Calvano in Support of the Motion of the Florida Funds for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (the "Calvano Decl."), submitted herewith.  Miami Beach F&P's Certification includes a revised Schedule A setting forth relevant transactions in AeroVironment stock, which includes a minor sale of AeroVironment stock that was inadvertently omitted from the certification filed with the complaint in this Action due to a clerical error.  In addition, charts reflecting the calculations of the Florida Funds' losses as a result of their transactions in AeroVironment securities during the Class Period are attached as Exhibit B to the Calvano Decl.

securities laws and overseeing counsel in complex litigation. Accordingly, the Florida Funds have the incentive and ability to supervise and monitor counsel.

Further, as set forth in greater detail in their Joint Declaration submitted herewith, the Florida Funds—two Florida-based public pension funds that have a pre-existing relationship and common fiduciary counsel—fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of the Action.[3] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The statute . . . requires only that any such group fairly and adequately protect the interests of the class."). In short, the Florida Funds are the "most adequate plaintiff" and should be appointed Lead Plaintiff.

The PSLRA also provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Florida Funds have further demonstrated their adequacy through their selection of Bernstein Litowitz and Saxena White as proposed Lead Counsel for the Class. Bernstein Litowitz and Saxena White are nationally recognized securities litigation firms that have recovered billions for defrauded

---

[3] *See* Joint Declaration in Support of the Florida Funds' Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Joint Declaration"), Calvano Decl., Ex. C.

investors.   Both firms are eminently qualified to prosecute this case and their extensive experience in securities fraud litigation will benefit the Class.

Accordingly, based on the Florida Funds' significant financial interest in this litigation and their commitment and ability to jointly oversee the Action in a cohesive and coordinated manner, the Florida Funds respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

## NATURE AND STAGE OF PROCEEDINGS

The Action asserts claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act on behalf of a class of all persons and entities who purchased or otherwise acquired AeroVironment securities beginning at 4:30 PM ET on June 24, 2025, through June 18, 2026, inclusive.  The Action is in the preliminary stages of litigation and, pursuant to the PSLRA, requires appointment of a Lead Plaintiff and Lead Counsel.

## SUMMARY OF THE ARGUMENT

1.      The PSLRA requires district courts to appoint the "most adequate plaintiff" as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B).  The Florida Funds respectfully submit that they are the "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff because: (1) the Florida Funds timely filed a motion; (2) to the best of the Florida Funds' knowledge, they have the largest financial interest in the relief sought by the Class; and (3) the Florida Funds will

5

fairly and adequately represent the interests of the Class. *See id.* § 78u-4(a)(3)(B)(iii)(I).

2.    The PSLRA also provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v). Accordingly, the Florida Funds respectfully request that the Court approve their selection of Bernstein Litowitz and Saxena White as Lead Counsel for the Class.

**STATEMENT OF FACTS**

AeroVironment is a Delaware corporation with its corporate headquarters in Arlington, Virginia. *See* D.I. 1 ¶ 13. The Company is a defense technology provider across air, land, sea, space, and cyber that develops and manufactures a large proportion of its technologies under various government contracts. *Id.* ¶ 18.

Shortly before the Class Period, AeroVironment completed its approximately $4.1 billion all-stock acquisition of BlueHalo, LLC ("BlueHalo"), another defense technology provider. *Id.* ¶ 19. One of BlueHalo's key value drivers was its role in the DoD's SCAR program, which had been launched to relieve pressure on the U.S. Space Force's aging Satellite Control Network. Through SCAR, BlueHalo had been awarded a contract to develop military satellite command and control stations known as Broad Area Deployable Ground Terminal Enabling Resilient Communications

6

("BADGERs") and the value of that contract was approximately $1.7 billion by the start of the Class Period. *Id.*

The Action alleges that, throughout the Class Period, Defendants touted the SCAR program and the Company's production of BADGERs as central to AeroVironment's growth, telling investors that the Company had "won" the SCAR contract, that it was "locked in," and that the customer was "asking for more." *Id.* ¶ 3. The Action alleges that these statements were materially false and misleading because, in truth, AeroVironment's agreement with the DoD to produce BADGERs for the SCAR program was not secure, the Company faced a significant threat of competition from other vendors for the same work, and there was a material risk that AeroVironment would not continue delivering products for SCAR, or would do so only on a significantly reduced basis. *Id.* ¶ 4.

The truth began to emerge on January 20, 2026, when AeroVironment announced that the U.S. Government had issued a stop work order on the Company's agreement to deliver BADGER systems to support the SCAR program. As a result of this disclosure, AeroVironment's stock price declined by $61.97 per share, or 16%. *Id.* ¶ 29. Even then, AeroVironment allegedly continued to mislead investors by representing that the stop work order would allow the parties to negotiate an amended agreement and that the Company expected to continue delivering products for the SCAR program. *Id.* ¶ 30.

7

On March 2, 2026, the truth emerged further when *Space News* reported that the DoD was reopening the SCAR program and soliciting proposals from vendors other than AeroVironment because the Space Force was "reassessing how to move forward." This news caused AeroVironment's stock price to decline by $43.93 per share, or 17%. *Id.* ¶ 32. Defendants continued to downplay the risk to the SCAR program, stating that AeroVironment was "still on the program," and that the Company was "multiple years ahead" of competitors. *Id.* ¶ 33.

Then, on March 10, 2026, AeroVironment revealed that the U.S. Government had informed the Company that it intended to terminate the SCAR agreement, while allowing AeroVironment to compete for work under the program in the future. AeroVironment also reported a $179 million net operating loss for the quarter, driven by a $151.3 million goodwill impairment charge in its Space reporting unit that was triggered by the SCAR stop work order. These disclosures caused AeroVironment's stock price to decline by $13.84 per share, or 6%. *Id.* ¶ 36. AeroVironment also filed its quarterly report for the third quarter of fiscal 2026, reporting the $151.3 million goodwill impairment charge, a goodwill balance of $2.46 billion as of January 31, 2026, and effective disclosure controls and procedures as of that date. *Id.* ¶ 39.

Then, on June 22, 2026, AeroVironment disclosed that the financial statements in its prior quarterly report should no longer be relied upon because the

8

Company had materially understated the goodwill impairment by \$89.4 million.  The Company further disclosed that the error and related restatement resulted from a material weakness in internal control over financial reporting and that its disclosure controls and procedures as of January 31, 2026, were ineffective.  As a result of these disclosures, AeroVironment's stock price declined by \$18.28 per share, or 11%.  *Id.* ¶ 41.

## ARGUMENT

I.  **THE FLORIDA FUNDS ARE THE MOST ADEQUATE PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF**

The PSLRA sets forth the procedure that governs the appointment of a lead plaintiff in securities class actions and establishes a presumption that the "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Cendant*, 264 F.3d at 262-63 (describing the process for selecting a lead plaintiff under the PSLRA).  As set forth below, the Florida Funds believe that they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

**A.  The Florida Funds' Motion Is Timely**

The PSLRA allows any member of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed.  *See id*. § 78u-4(a)(3)(A)(i)(II).  On May 26, 2026, Eric Norrell filed the first

9

action against AeroVironment and certain of its senior executives.  *See Norrell*, D.I. 1.  The same day, counsel for Mr. Norrell published a notice on *ACCESS Newswire* alerting investors to the pendency of the *Norrell* action and informing them of the sixty-day deadline to seek appointment as Lead Plaintiff, which is July 27, 2026.  *See* Calvano Decl., Ex. D.

Then, on July 17, 2026, Miami Beach F&P, through its counsel, Bernstein Litowitz, filed this Action, asserting allegations substantially similar to those in the *Norrell* action, over the longer Class Period.  *See* D.I. 1.  That same day, Bernstein Litowitz published a notice on *Business Wire*, alerting investors to the pendency of this Action and the expanded Class Period, and reiterating the July 27, 2026 deadline for investors to seek appointment as Lead Plaintiff.  *See* Calvano Decl., Ex. E.

The filing of this Action did not disturb the previously noticed July 27, 2026 deadline to seek appointment as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims . . . is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published.").  Accordingly, the Florida Funds' motion is timely.

> **B.     The Florida Funds Have the Largest Financial Interest in the Relief Sought by the Class**

The Florida Funds should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(bb).  The Florida Funds suffered a loss of approximately $640,000 on their Class Period purchases of 6,315 shares of AeroVironment common stock. *See* Calvano Decl., Exs. A-B.  To the best of the Florida Funds' knowledge, there is no other movant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation.  Accordingly, the Florida Funds have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### C.    The Florida Funds Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  At the lead plaintiff stage, a movant or movant group needs to make only a "*prima facie* showing of typicality and adequacy."  *Cendant*, 264 F.3d at 263.  The Florida Funds satisfy the typicality and adequacy requirements.

The Florida Funds' claims are typical of the claims of other Class members. "As to typicality under Rule 23, the Court must determine whether [the movant's] circumstances or legal theories are 'markedly different' than those of the proposed class."  *Wigginton v. Advance Auto Parts, Inc.*, 2018 WL 5729733, at *4 (D. Del. Nov. 2, 2018) (typicality satisfied where proposed lead plaintiff's claims "appear to be based on the same conduct and legal theories as the proposed class claims").

11

The Florida Funds and all other Class members suffered the same injuries, their claims arise from the same course of events, and their legal arguments to prove Defendants' liability are nearly identical.  Like all other Class members, the Florida Funds (1) purchased AeroVironment securities during the Class Period, (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) were harmed when the truth was revealed.  *See OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 401 (D. Del. 2014) (finding typicality requirement met when proposed lead plaintiff "assert that they purchased shares of [defendant corporation] stock on the open market, that they purchased the shares at an inflated price as result of Defendants concealment of material information . . . and that they suffered losses as a result").  Accordingly, the Florida Funds satisfy Rule 23's typicality requirement.

The Florida Funds also satisfy the adequacy requirement of Rule 23.  Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "As to adequacy under Rule 23, the Court must determine whether [the movant] possesses the 'ability and incentive' to represent the class 'vigorously,' whether it has retained adequate counsel to represent the entire class, and whether there are conflicts between [the movant's] claims and the claims of the proposed class."  *Advance Auto Parts*, 2018 WL 5729733, at *4.  The Florida Funds satisfy these elements because their substantial

12

financial stake in the litigation provides them with the incentive to vigorously represent the Class's claims. The Florida Funds' interests are aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between the Florida Funds and other members of the Class.

To further demonstrate their ability to litigate this case in the best interests of the Class, the Florida Funds have submitted the Joint Declaration, which describes how and why they decided to work together and seek joint appointment as Lead Plaintiff in this Action. *See* Calvano Decl., Ex. C ¶¶ 7-11. The Joint Declaration also affirms their understanding of the duties owed to the Class, and discusses the Florida Funds' experiences working with other institutional investors in securities class action litigation. *See id*. ¶¶ 1, 4. Through the Joint Declaration and their PSLRA Certifications, the Florida Funds have demonstrated that they understand and accept the fiduciary obligations they will assume if appointed Lead Plaintiff and will zealously represent the interests of all Class members. *See* Calvano Decl., Exs. A & C.

Finally, the Florida Funds further demonstrated their adequacy through their selection of Bernstein Litowitz and Saxena White as Lead Counsel to represent the Class in this Action. As discussed below, both Bernstein Litowitz and Saxena White are highly qualified and experienced in securities class action litigation and have

13

repeatedly demonstrated their ability to conduct complex securities class action litigation effectively. Accordingly, the Florida Funds satisfy Rule 23's adequacy requirement.

### D. The Florida Funds Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, the Florida Funds are the paradigmatic Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with a substantial financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at *34, *reprinted in* 1995 U.S.C.C.A.N. at 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Cendant*, 264 F.3d at 244 (identifying Congress' preference for institutional investors as lead plaintiffs).

The plain text of the PSLRA expressly permits the appointment of an appropriate group of class members, like the Florida Funds, to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *id*. § 78u-4(a)(3)(B)(i). Accordingly, courts in this District and throughout the country have routinely appointed small, cohesive groups of investors that have a substantial financial stake in the litigation, such as the Florida Funds, as Lead Plaintiff, and the Third Circuit has recognized the propriety of appointing such groups. *See Cendant*, 264 F.3d at 266 ("The statute . .

. requires only that any such group 'fairly and adequately protect the interests of the class.'"); *Cooper Tire & Rubber*, 63 F. Supp. 3d at 411 (appointing a group of two institutional investors); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 153 (D. Del. 2005) (same).

The Florida Funds are well aware of the Lead Plaintiff's duties, including the responsibility to oversee and supervise the litigation separate and apart from counsel, and are committed to overseeing this Action in the best interests of the Class. *See* Calvano Decl., Ex. C ¶¶ 12, 16. To this end, the Florida Funds have each submitted sworn Certifications and a Joint Declaration attesting to their willingness and ability to fulfill those duties here. *See* Calvano Decl., Exs. A & C; *see also Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2020 WL 815136, at *5, *8 (E.D. Pa. Feb. 19, 2020) (appointing a group of five institutional investors based on sworn attestations in a joint declaration regarding the group's willingness to prosecute the case in the best interest of all class members). As set forth in their Joint Declaration, the Florida Funds both have experience and success serving as lead plaintiffs in securities class actions, including in cases where they served alongside other institutional investors. *See* Calvano Decl., Ex. C ¶ 4. The Florida Funds' decision to join together to prosecute this litigation is informed by their experience prosecuting shareholder class actions alongside other institutional investors. *See id.* ¶¶ 4, 12, 17. The Florida Funds have demonstrated their willingness, resources, and

15

ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of the Action. *See id.* ¶¶ 5, 7, 12.

The Florida Funds represent public safety employees in the State of Florida, and have longstanding relationships with each other. *See id.* ¶ 10. Among other connections, the Florida Funds are familiar with each other from membership in common trade associations and pension education conferences, including the Florida Public Pension Trustees Association, the National Conference on Public Employee Retirement Systems, and the Florida Division of Retirement. *See id.* The Florida Funds also share common fiduciary counsel. *See id.* As a result, the Florida Funds have demonstrated that they are the type of cohesive group of sophisticated institutional investors that courts routinely appoint as lead plaintiff.

Moreover, the Florida Funds have already taken measures to ensure the claims are vigorously and effectively prosecuted in the best interests of the Class. For example, Miami Beach F&P filed this Action, expanding the Class Period on behalf of the Class. *See id.* ¶ 7; D.I. 1. Recognizing that this litigation will be best guided by institutional investors that are familiar with and understand the requirements attendant upon a fiduciary, the Florida Funds each independently determined to join together to seek appointment as Lead Plaintiff. The decision of the Florida Funds to join together was based on, among other things, their roles as fiduciaries to their

16

respective members, their shared goals and interests in maximizing fund assets, and their experience serving as representative plaintiffs as part of small groups in securities litigation. *See id.* ¶¶ 4, 7. Based on their understanding that working together would allow for the sharing of experiences and resources, the Florida Funds believe that partnering will add substantial value to the prosecution of the Action and will benefit the Class. *See id.* ¶ 12.

As also set forth in their Joint Declaration, the Florida Funds have demonstrated their commitment to working cohesively together in the prosecution of the Related Actions. *See id.* ¶¶ 14-15. The Joint Declaration further details the steps that the Florida Funds have already taken (and will continue to take) to ensure the vigorous prosecution of the Related Actions and to oversee counsel. In sum, the Florida Funds have demonstrated their willingness, resources, experience, and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class. As such, the Florida Funds are precisely the type of institutional investors that Congress sought to empower as Lead Plaintiff when enacting the PSLRA.

## II.   THE COURT SHOULD APPROVE THE FLORIDA FUNDS' SELECTION OF LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cendant*, 264 F.3d at 276 (noting that the PSLRA "evidences a strong presumption

17

in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). The Florida Funds have selected Bernstein Litowitz and Saxena White to serve as Lead Counsel for the Class. The Florida Funds' selection of counsel should be approved.

As set forth in their respective firm résumés, Bernstein Litowitz and Saxena White have extensive experience prosecuting complex litigation on behalf of aggrieved shareholders. *See* Calvano Decl., Exs. F (Bernstein Litowitz Firm Résumé) & G (Saxena White Firm Résumé). Indeed, Bernstein Litowitz and Saxena White have a long history of working together in the prosecution of securities class actions. For example, Bernstein Litowitz and Saxena White served together as co-lead counsel in *In re Wilmington Trust Securities Litigation*, No. 10-cv-990 (D. Del.), and secured a $210 million recovery for the class—the second-largest securities class action recovery in Delaware history. Bernstein Litowitz and Saxena White also successfully served as co-lead counsel in *In re Rayonier Inc. Securities Litigation*, No. 14-cv-1395 (M.D. Fla.) (recovering $73 million for the class); *In re James River Group Holdings, Ltd. Securities Litigation*, No. 21-cv-00444 (E.D. Va.) (recovering $30 million for the class); *City of Miami Fire Fighters' & Police Officers' Retirement Trust v. Cerence Inc.*, No. 22-cv-10321 (D. Mass.) (same); *In re Tower Group International, Ltd. Securities Litigation*, No. 13-cv-5852 (S.D.N.Y.) (recovering $20.5 million for the class); and *In re Merit Medical Systems, Inc.*

18

*Securities Litigation*, No. 19-cv-2326 (C.D. Cal.) (recovering $18.25 million for the class). Additionally, Bernstein Litowitz and Saxena White currently serve together as co-lead counsel in *Pembroke Pines Firefighters & Police Officers Pension Fund v. Integra Lifesciences Holdings Corporation*, No. 23-cv-20321 (D.N.J.), *In re Toronto-Dominion Bank/First Horizon Corporation Securities Litigation*, No. 23-cv-02763 (D.N.J.), and *In re Vertiv Holdings Co. Securities Litigation*, No. 22-cv-3572 (S.D.N.Y.).

Bernstein Litowitz is among the preeminent securities class action law firms in the country and has extensive experience serving as lead counsel in securities class actions, including in this District. *See* Calvano Decl., Ex. F (Bernstein Litowitz Firm Résumé). For example, Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which settlements totaling over $6 billion were reached—the second-largest recovery in securities class action history. Bernstein Litowitz also secured a recovery of $2.425 billion for the class in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058 (S.D.N.Y.), a $1.06 billion recovery for the class in *In re Merck & Co. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.), a $1 billion recovery for the class in *In re Wells Fargo & Company Securities Litigation*, No. 20-cv-4494 (S.D.N.Y.), and a $730 million recovery for the class in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.).

19

Examples in which courts in the Third Circuit, including this District, have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Schering-Plough Corporation/Enhance Litigation*, No. 08-cv-397 (D.N.J.), and *In re Merck & Co. Vytorin/Zetia Securities Litigation*, No. 08-cv-2177 (D.N.J.) (combined recoveries of $688 million for investors); *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-cv-621 (D.N.J.) (recovering $667 million for investors); *In re DaimlerChrysler Securities Litigation*, No. 00-cv-993 (D. Del.) (recovering $300 million for investors).

Likewise, Saxena White has substantial experience prosecuting securities class actions and has achieved significant recoveries on behalf of investors as lead or co-lead counsel in major securities class actions throughout the country. *See* Calvano Decl., Ex. G (Saxena White Firm Résumé). The firm has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *Peace Officers Annuity and Benefit Fund of Georgia v. DaVita Inc.*, No. 17-cv-304 (D. Colo.) (achieving a $135 million recovery); *Black v. Snap Inc.*, No. 21-cv-8892 (C.D. Cal.) (achieving a $65 million recovery); *In re Apache Corp. Securities Litigation*, No. 21-cv-575 (S.D. Tex.) (achieving a $65 million recovery); *Plymouth County Retirement System v. Patterson Cos., Inc.*, No. 18-cv-871 (D. Minn.) (achieving a $63 million recovery); *Leventhal v. Chegg, Inc.*, No. 21-cv-9953 (N.D. Cal.) (achieving a $55 million recovery); *Central Laborers' Pension Fund v.*

20

*SIRVA, Inc.*, No. 04-cv-7644 (N.D. Ill.) (achieving a $53.3 million recovery); *In re HD Supply Holdings, Inc. Securities Litigation*, No. 17-cv-2587 (N.D. Ga.) (achieving a $50 million recovery); and *Teamsters Local 456 Pension Fund v. Universal Health Services Inc.*, No. 17-cv-2817 (E.D. Pa.) (achieving a $17.5 million recovery).

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve the Florida Funds' selection of Bernstein Litowitz and Saxena White as Lead Counsel for the Class.

## CONCLUSION

For the reasons stated herein, the Florida Funds respectfully request that the Court: (i) appoint the Florida Funds as Lead Plaintiff; (ii) approve their selection of Bernstein Litowitz and Saxena White as Lead Counsel for the Class; and (iii) grant such other and further relief as the Court may deem just and proper.

DATED: July 27, 2026

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Anthony M. Calvano*
Anthony M. Calvano (DE Bar ID #6265)
Gregory V. Varallo (DE Bar ID #2242)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
anthony.calvano@blbglaw.com
greg.varallo@blbglaw.com

21

-and-

Hannah Ross
Scott R. Foglietta
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
hannah@blbglaw.com
scott.foglietta@blbglaw.com

**SAXENA WHITE P.A.**
Maya Saxena
Lester R. Hooker
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

-and-

Marco A. Dueñas
10 Bank Street, Suite 882
White Plains, NY 10606
Telephone: (914) 437-8551
Fax: (888) 631-3611
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff the
Florida Funds, and Proposed Lead
Counsel for the Class*

**KLAUSNER, KAUFMAN, JENSEN
  & LEVINSON, P.A.**
Robert D. Klausner
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
Fax: (954) 916-1232

22

bob@robertdklausner.com

*Additional Counsel for Proposed Lead*
*Plaintiff the Florida Funds*

23

## WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing document contains 4,974 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

/s/ Anthony M. Calvano
Anthony M. Calvano
(DE Bar ID #6265)